## **CONTINUATION OF APPLICATION FOR SEARCH WARRANT**

### **A. Introduction**

1. I, Sarah C. Hill, am employed by the U.S. Bureau of Indian Affairs ("BIA") as a Special Agent.  I am assigned to the Upper Peninsula Substance Enforcement Team ("UPSET").  As a BIA Special Agent, my duties include working with different law enforcement agencies to conduct drug investigations that have a nexus to Indian Country.  I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Center at Glynco, Georgia.  Prior to my employment with BIA, I worked as an analyst for the Central Intelligence Agency for over five years.  As a BIA Special Agent and a member of UPSET, I have the authority to investigate crimes occurring within Indian Country and within the state of Michigan.  I also have the authority to seek and execute federal and state process to include search warrants and criminal complaints.

2. I have received training from the Federal Law Enforcement Center on the identification of illegal controlled substances, including methamphetamine.  I am familiar with illegal drug terminology, packaging, and trafficking methods.  I have attended Drug Enforcement Administration's Asset Forfeiture and Diversion Course, Basic and Advanced classes on the Reid Technique of Interviewing and Interrogation, Michigan State Police Raid School, and the Midwest Counterdrug Training Center's Undercover Techniques and Survival course.

3. This search warrant seeks authorization to search the cellular telephone described in Attachment A (the "SUBJECT DEVICE").  The SUBJECT DEVICE is more particularly described as follows:

   Black iPhone, S/N and IMEI numbers not known, with a blue case and black/brown cardholder labeled Tahquamenon Falls Michigan

4. The SUBJECT DEVICE is currently in law enforcement possession and is stored at UPSET-North office as property.  As further described below, it came into law enforcement's possession after it was seized during ALEXANDER BRANDON SAGATAW's arrest on February 1, 2022.

5. The information provided in this Continuation is based upon my own investigation and observations, as well as the investigation and observations of other law enforcement officers. Because this Continuation is being submitted for the limited purpose of establishing probable cause for the issuance of the requested search warrant, I have not included each and every fact I know about this investigation.

1

6. I am currently investigating ALEXANDER BRANDON SAGATAW ("SAGATAW"), for conspiracy to distribute methamphetamine.

7. I respectfully submit that my investigation establishes probable cause to believe that SAGATAW committed the crime of Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine in violation of Title 21, United States Code, Section 846, 841(a)(1), and that evidence, as described in Attachment B, of those crimes will be located on the SUBJECT DEVICE, as described in Attachment A.

## B. Venue

8. This Court has venue to issue the requested warrant because the property to be searched is within the district. Fed. R. Crim. P. 41(b)(1).

## C. Investigation

9. I conducted a criminal history search on SAGATAW and observed the following relevant convictions:

   a. 2008 Distribution of Marijuana
   b. 2014 Narcotics – Sell – Distribute – or Dispense

10. Beginning in early 2021, UPSET investigators have received tips and information that JERMAINE LEE MORGAN JR ("MORGAN") aka "Maine," aka "Flex" was bringing illegal drugs from the Detroit, Michigan area to the Upper Peninsula of Michigan for redistribution. Based on surveillance, investigators identified a known address on Deer Ridge Road on the Hannahville Indian Reservation as a location from which MORGAN was likely distributing controlled substances. Over the course of the investigation, investigators have learned that JOHN PAUL DECOTA JR. ("DECOTA") primarily resides at the known address on Deer Ridge Road.

11. The investigation into MORGAN led UPSET detectives to other individuals from Detroit that are also redistributing illegal drugs into the Upper Peninsula, specifically TYLER SMITH ("SMITH") aka "Ty" aka "Ty Ty" and JASON EARL ARNOLD ("ARNOLD").

12. On July 15, 2021, a vehicle was stopped in which MORGAN, JILL ELIZABETH ROBERTS, and two others were traveling westbound in the Upper Peninsula after crossing the Mackinac Bridge. Investigators found what laboratory tests confirmed was more than 500 grams of methamphetamine. ROBERTS was arrested on that date and charged in Mackinac County with possession with

intent to distribute methamphetamine, while MORGAN was let go to allow the investigation to continue.

13. On September 22, 2021, a federal grand jury charged MORGAN with one count of Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, two (2) counts of Distribution of Methamphetamine, and one count of Possession with Intent to Distribute Methamphetamine. On November 1, 2021, MORGAN pled to Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine. *(See United States v. Morgan, W.D. Mich. Case no. 2:21-cr-00025-HYJ-MV)*

14. On October 13, 2021, this Court authorized a search warrant for two Facebook accounts in case no. 2:21-mj-00048. The Facebook accounts were used by ROBERTS (Facebook ID ███████3593) and MORGAN (Facebook ID ███████1245).  I determined Facebook ID ███████3593 was ROBERTS's Facebook account based on several selfie images of ROBERTS uploaded to "Timeline photos" and "Profile Pictures."

15. I reviewed the Facebook records for ROBERTS (Facebook ID ███████3593) and observed conversations with the other subjects in this investigation, including conversations with "Alejandro Sagataw" (Facebook ID ███████5190). I believe this account is used by SAGATAW based on a selfie image of SAGATAW with a small child uploaded to "Profile pictures" and other selfie image files uploaded to "Mobile Uploads."

16. Based on my training, experience, and recent investigations, individuals using Facebook to communicate typically do so from a cellphone.

17. "Alejandro Sagataw" (hereafter "SAGATAW's account") had messages with ROBERTS that, through my training and experience, relate to the distribution of controlled substances. For instance, on May 21, 2021, SAGATAW's account messaged ROBERTS that he is going to "…need sum more but I'll have a bankroll for ya." ROBERTS responds, "…can you drop it off to shanna at bubs? Need to reup soon." Through my training and experience, I believe ROBERTS is telling SAGATAW to drop money off to Shanna Decota at DECOTA's residence on Deer Ridge Rd in Wilson, MI, and that she needs to obtain more controlled substances for distribution when she says "Need to reup soon." Through my training and experience, I know that "reup" is a common term used by drug traffickers meaning to get more drugs from a source of supply. The excerpts below are not all the conversations between ROBERTS and SAGATAW. A select few were taken to establish probable cause for the issuance of this search warrant:

3



18. On November 2, 2021, SMITH was stopped near Detroit, Michigan driving a 2020 Hyundai Elantra vehicle, Serial No ███████████20403.  DEA TFO Piatt obtained a rental agreement for the vehicle that SMITH was driving on November 2, 2021. The vehicle (VIN ████████████20403) was rented to Alexander SAGATAW at the Delta County Airport in Escanaba, Michigan. Investigators had obtained a search warrant to monitor SMITH's location data on a phone number ending in -4405  Investigators know SMITH uses that phone because while monitoring the ping locations investigators saw SMITH moving in conjunction with the pings on multiple occasions.  Based on that phone location data, SMITH had come from the Upper Peninsula.  An

4

officer searched SMITH and found SMITH had $4,069 on him.  SMITH said he was coming from a local establishment, which based on investigators' review of his ping information was not true.

19. On December 27, 2021, investigators stopped a vehicle in Delta County moving in conjunction with SMITH's pings for the number ending in -4405.  Inside the vehicle, investigators found SMITH and ARNOLD, and no other people.  During a subsequent search of the vehicle, investigators found about four ounces of what laboratory tests confirmed was methamphetamine.

20. On January 6, 2022, this Court authorized a search warrant for ten Facebook accounts in case no. 2:22-mj-00001. The Facebook accounts include a different account used by ROBERTS (Facebook ID ███████████7132) and SAGATAW's account (Facebook ID ███████████5190).

21. I reviewed SAGATAW's account and observed messages with ROBERTS around the timeframe of the rental agreement and SMITH's traffic stop. The messages below, along with obtaining a copy of SAGATAW's rental agreement, suggest that ROBERTS arranged for SAGATAW to rent the vehicle that SMITH was stopped in:





From: Facebook: ▮▮▮▮▮▮ Alejandro Sagataw
Let me know when it's good and when you do put it in my account, make sure it's Alexander Sagataw
11/2/2021 5:39:57 PM(UTC+0)

Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)

From: Facebook: ▮▮▮▮▮▮ Jill Roberts
Got u
11/2/2021 5:40:13 PM(UTC+0)

Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)



From: Facebook ▮▮▮▮▮▮ Alejandro Sagataw
Almost there?
11/2/2021 5:54:55 PM(UTC+0)

Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)



From: Facebook: ▮▮▮▮▮▮ Jill Roberts
I'm calling her m
11/2/2021 5:56:23 PM(UTC+0)

Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)

From: Facebook: ▮▮▮▮▮▮ Jill Roberts
Omw there m
11/2/2021 6:07:38 PM(UTC+0)

Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)



From: Facebook: ▮▮▮▮▮▮ Alejandro Sagataw
Ok
11/2/2021 6:07:56 PM(UTC+0)

Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)





22. After SAGATAW received the message from ROBERTS asking if everything is good, SAGATAW sent ROBERTS an image from inside a vehicle. In the image, the vehicle dash shows the date of November 2 and, based on my training and experience, SAGATAW likely used his cellular telephone to capture the image and send it through Facebook Messenger to ROBERTS while driving the rental vehicle:



23. I also reviewed messages between an account with handle "Ty Ty" and another with handle "John Paul Decota Jr." On November 3, 2021 (that is, one day after SAGATAW rented the vehicle and after SMITH was stopped with $4,069 on his person), Ty Ty wrote John Paul Decota Jr., asking Decota to "Call Alex and tell him to extend da rental for one day." Later, Decota wrote, "He wanted more for him doing that man, honestly, them couple chunks wasn't that much." Based on my training and experience, a "chunk" is common slang for a quantity of crystal methamphetamine. Thus, when Decota told Ty Ty that he [Alex] wanted more for doing that and them couple chunks wasn't that much, Decota is telling Ty Ty that Alex got methamphetamine for renting the vehicle and wanted more to extend the rental. Based on the timing, names, and context, I

believe Ty Ty and John Paul Decota, Jr., are discussing SAGATAW's rental of the vehicle for SMITH.



24. In addition, SAGATAW's account contains a conversation where John Paul Decota Jr. asked SAGATAW for the papers. Decota specifically stated, "Just the paperwork for it, idk what he wants it for" to which SAGATAW replied "Ain't nothing like a trail hey":



From: Facebook: ███████████ John Paul DeCota Jr.

Where's the papers

11/2/2021 7:50:16 PM(UTC+0)

Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)



From: Facebook: ███████████ Alejandro Sagataw

They didn't give me any

11/2/2021 7:51:44 PM(UTC+0)

Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)



From: Facebook: ███████████ Alejandro Sagataw

It's probably all in my emails

11/2/2021 7:51:54 PM(UTC+0)

Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)



From: Facebook: ███████████ John Paul DeCota Jr.

Ok

11/2/2021 7:52:16 PM(UTC+0)

Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)

From: Facebook: ███████████ John Paul DeCota Jr.

Can ya send screenshots bro

11/2/2021 7:52:25 PM(UTC+0)

Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)



From: Facebook: ███████████ Alejandro Sagataw

Ok what are you lookin for

11/2/2021 7:52:59 PM(UTC+0)

Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)





25. Shortly thereafter, SAGATAW sent the below image to John Paul Decota Jr.:



26. Later, John Paul Decota Jr. sent SAGATAW a screenshot image of DECOTA's conversation with "Ty Ty" that was observed in other Facebook records and discussed in paragraph 23:



27. After the screenshot image was sent to SAGATAW, the conversation continues:



28. Also in November, SAGATAW messaged ROBERTS looking for "work," which
    based on my training and experience and familiarity with this case, SAGATAW
    is looking for product, most likely methamphetamine, to sell. ROBERTS

responded, "Lol I hear ya I'll let u know as soon as it gets here not til tomorrow sometime." In the meantime, SAGATAW asked for "…a point or two till tomorrow…" I know, based on my training and experience, that a point refers to the weight of 0.1 gram of a controlled substance.







14



From: Facebook: ▮▮▮▮▮▮ Alejandro Sagataw
Work
11/15/2021 3:38:30 AM(UTC+0)
Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)

From: Facebook: ▮▮▮▮▮▮ Alejandro Sagataw
Help me help you
11/15/2021 3:38:50 AM(UTC+0)
Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)

From: Facebook ▮▮▮▮▮▮ Alejandro Sagataw
Ya dig
11/15/2021 3:38:57 AM(UTC+0)
Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)



From: Facebook: ▮▮▮▮▮▮ Jill Roberts
Lol I hear ya I'll let u know as soon as it gets here not til tomorrow sometime
11/15/2021 3:39:34 AM(UTC+0)
Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)



From: Facebook ▮▮▮▮▮▮ Alejandro Sagataw
Sorry I waited for someone to pay me that shouldn't have took this long
11/15/2021 3:39:37 AM(UTC+0)
Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)



From: Facebook: ▮▮▮▮▮▮ Jill Roberts
Just as long as u don't forget me
11/15/2021 3:40:01 AM(UTC+0)
Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)

15



From: Facebook: ▮▮▮▮▮▮ Alejandro Sagataw
Got anything so I can get right
11/15/2021 3:40:19 AM(UTC+0)
Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)

From: Facebook: ▮▮▮▮▮▮ Jill Roberts
I got a lil I can do wit ya that's it
11/15/2021 3:40:43 AM(UTC+0)
Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)

From: Facebook: ▮▮▮▮▮▮ Alejandro Sagataw
Let me get a point or two till tomorrow but I got you for the hunnid
11/15/2021 3:41:29 AM(UTC+0)
Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)



From: Facebook: ▮▮▮▮▮▮ Jill Roberts
That sounds good to me
11/15/2021 3:42:02 AM(UTC+0)
Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)



From: Facebook: ▮▮▮▮▮▮ Alejandro Sagataw
Where ya at
11/15/2021 3:42:10 AM(UTC+0)
Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)



From: Facebook: ▮▮▮▮▮▮ Jill Roberts
Vances
11/15/2021 3:42:17 AM(UTC+0)
Source Info:
362317385294327.zip/index.html : 0x0 (Size: 7477653 bytes)

29. During December 2021, SAGATAW messaged ROBERTS, "Need another .5… I got 2.47." Based on my training and experience, and familiarity with this case, SAGATAW messaged ROBERTS that he needs another half gram of methamphetamine because he only received 2.47 grams, which suggests that SAGATAW either purchased or was fronted three (3) grams of methamphetamine. ROBERTS responded, "Oh my bad I knew that one was short…"



30. On January 26, 2022, a federal grand jury charged SAGATAW with one count of Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine. SAGATAW was arrested on February 1, 2022 and the SUBJECT DEVICE was seized during his arrest.

31. I submit that there is probable cause to believe that the SUBJECT DEVICE will provide evidence of drug trafficking in the form of text messages, communications, and images consistent with drug distribution, such as the image SAGATAW sent ROBERTS on November 2, 2021.  I submit there is probable cause to believe that the SUBJECT DEVICE is an instrumentality of a crime in that it was used as part of his drug distribution and that evidence of those crimes will be found on the SUBJECT DEVICE.

32. I submit that there is probable cause to believe that the SUBJECT DEVICE will provide evidence of drug trafficking as members of drug conspiracies commonly use multiple cellular telephones and/or telephone numbers to evade detection and destroy evidence.

## D. Electronic Storage and Forensic Analysis

33. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

34. Based on my training, experience, and research, I know that cellular telephones have capabilities that allow them to serve as a wireless telephone, to serve as a digital camera and video camera, to access the Internet, to store electronic documents and files, to be used as a calendar/schedule appointments, and to do many of the same tasks that a computer can do.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

35. Based on my training and experience, persons involved in narcotics trafficking utilize cellular telephones to further their drug activities.  More specifically, I know that drug distributors and members of drug conspiracies use cellular telephones to further the conspiracy, including by:

   a. communicating with other co-conspirators (e.g., suppliers, couriers, and recipients of controlled substances) by talking and by sending e-mail messages, text messages, and messages through social media (e.g., Facebook);

    b.   storing contact information of co-conspirators, customers, and/or suppliers;

    c.   taking photographs of co-conspirators and contraband;

    d.   using the internet to make purchases and transfer money with other co-conspirators, customers, and/or suppliers; and

    e.   using mapping applications to navigate to "meet spots."

36. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.   Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.   The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

37. I know that when an individual uses an electronic device to facilitate drug transactions, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime.  The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The electronic device is also likely to be a storage medium for evidence of crime.  From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

38. *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

a.  Michigan State Police (MSP) Computer Crimes Unit (CCU) analysts are certified in Cellebrite's Universal Forensic Extraction Device (UFED), a forensics tool used to extract data from smartphones, tablets and portable GPS devices.

b.  In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence.  In other cases, however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information.

c.  These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to things described in Attachment A, or perusing all stored information briefly to determine whether it falls within the scope of the warrant.

d.   In light of these difficulties, the MSP CCU intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

39. *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## E.  Conclusion

40. I submit that this Continuation supports probable cause to believe that SAGATAW committed the crime of Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine in violation of Title 21, United States Code, Section 846, 841(a)(1).  Further, I submit the is probable cause to believe evidence of those crimes, as defined in Attachment B, will be found on the SUBJECT DEVICE further described in Attachment A.